ADOLPH S. DEUTSCH *vs.* ISAAC D. PRATT.

Suffolk. March 14, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Contract of Sale — Offer — Acceptance — Damages.*

An offer of sale by telegram and letter, each dated June 8, was for " six tons car boxes free of Babbitt" metal, described as "a good lot," at eight and one eighth cents a pound. The offeree, upon receiving the telegram, at once telegraphed in

reply, " Seven three quarters best can do, wire if accepted," and, receiving no reply, on June 9, after receiving the letter, telegraphed again, " Will pay you eight cents for brass boxes," to which the offerer replied, " Your offer accepted; will ship what we have." *Held*, that the sale was of car boxes which should be free from Babbitt metal and a good lot.

The seller, who was a dealer in metals in Boston, thereupon shipped to the buyer, who was such a dealer in Cleveland, a lot of car boxes which was not a good lot or free from Babbitt metal, six tons however being free from it and constituting a good lot, and the eight hundred and forty eight pounds remaining not being thus free, but being of an inferior quality. The buyer, before the boxes were received or examined by him, paid the price agreed for the entire lot. *Held*, that the buyer could recover the difference between the price paid and the market value in Boston of the whole lot as it was, and not merely the difference between the price paid for the eight hundred and forty-eight pounds as a part of the lot and the value of that portion there.

CONTRACT, with a count in tort alleged to be for the same cause of action, for the breach of an agreement of sale. Writ dated August 23, 1887. Trial in the Superior Court, without a jury, before *Barker*, J., who reported the case for the determination of this court, in substance as follows.

On June 8, 1887, the defendant, a dealer in metals in Boston, doing business under the name of I. L. Pratt and Company, sent a telegram to the plaintiff, a dealer in Cleveland, Ohio, in scrap metals, doing business under the name of A. S. Deutsch and Company, with whom he had had previous dealings. This telegram was dated at Boston, addressed to the plaintiff at Cleveland, and read, " Can you use six tons car boxes free of Babbitt, eight one eighth, Boston. Terms as before. Wire answer." On the same day the defendant mailed from Boston to the plaintiff at Cleveland the following letter : ' " Boston, Mass., June 8th, 1887. Messrs. A. S. Deutsch & Co., Cleveland, Ohio: Dear Sirs, — We wired you to-day the following: ' Can you use six tons car boxes free of Babbitt, eight one eighth, Boston. Terms as before. Wire answer.' They are a good lot, and should like to ship them to you if not sold upon receipt of your early reply. We are, very truly, I. L. Pratt & Co."

The plaintiff received the telegram at Cleveland on June 8, and on the same day telegraphed to the defendant in reply, " Seven three quarters best can do. Wire if accepted." This telegram was received at Boston on the same day by the defendant, who made no reply to it. On June 9, the plaintiff received

the defendant's letter of the day before, and thereupon sent to the defendant a second telegram, as follows: "Will pay you eight cents for brass boxes. Wire if accepted." To this the defendant immediately telegraphed an answer as follows: "Your offer accepted. Will ship what we have."

Upon the receipt of this telegram the plaintiff on the same day mailed a letter to the defendant stating: "We wired you this A. M. as follows: 'Will pay you eight cents for brass boxes. Wire if accepted,' to which we received your answer saying: 'Your offer accepted. Will ship what we have.' Please ship as soon as possible, and bill them at the R. R. Co. as scrap zinc, to insure a low rate of freight."

Upon receipt of this letter the defendant shipped to Cleveland by railroad 12,953 pounds of brass car boxes, consigned to the defendant's order, the price of which at eight cents per pound, was $1,036.24, annexing to the bill of lading his draft on the plaintiff for that amount. Before the boxes arrived at Cleveland, this draft was accepted and paid by the plaintiff, who thereupon resold them in Cleveland to a brass founder, at nine cents per pound. In making the purchase, the plaintiff relied on the defendant's telegram and letter of June 8, and resold the boxes on the representations made in the letter.

Upon the arrival of the boxes, the brass founder found them to be of a quality inferior to that which he had expected, declined to accept them, and returned them to the plaintiff, who thereupon, on June 24, wrote to defendant as follows: "We find the lot of brass boxes you sent us to be the worst lot we have ever handled, and look as if they were the refuse of some brass foundry. We had sold them on the representation you made us in yours of the 8th instant, and we are obliged to take them back solely on account of the poor quality."

The defendant, however, claimed it was a good lot of boxes, and refused to take them back or make any allowance.

The plaintiff claimed to recover of the defendant three cents per pound, or $388.59, which was the difference in value at Cleveland, at the time of his purchase, between such boxes as he understood he was purchasing and those which he received.

The plaintiff understood from the defendant's telegram and letter of June 8 that he was purchasing car boxes made of red

brass, which form the best quality of car boxes for railroad cars, and are made to be used and are used without a lining of Babbitt metal and so are "free of Babbitt," and necessarily constitute a "good lot" of car boxes; and this was the understanding of the term "car boxes" in the metal trade at Cleveland, but the defendant was ignorant of that fact. The defendant — in common with other dealers in the metal trade at Boston, where the terms "car boxes," and "brass car boxes," and "a good lot of car boxes free of Babbitt" did not have a uniform meaning — understood the term "car boxes free of Babbitt" to include boxes made of yellow brass designed to be used with a lining of Babbitt metal, but which had not been so lined, or from which the lining had been removed, and the term "brass boxes" to include any brass car boxes, with or without a lining of Babbitt metal; but the plaintiff did not know in what sense the terms were used in the trade at Boston.

Of the 12,953 pounds of car boxes shipped to Cleveland 6,000 pounds were yellow brass boxes designed to be used with a lining of Babbitt metal, but never finished, lined, or used on cars, being cast by a mistake from the wrong pattern; of the remaining 6,953 pounds, 6,473 pounds were yellow brass car boxes designed to be used with a lining of Babbitt metal, and which had been so used, but from some of which the lining had not been removed. The defendant bought these 12,473 pounds from a brass founder in one lot, and the remaining 480 pounds were a miscellaneous lot which he had in stock on June 9, some of red brass without a lining of Babbitt metal, and some of yellow brass with such lining. In the whole lot of 12,953 pounds there were 848 pounds of boxes from which the Babbitt metal had not been removed. The fair market value at Boston on June 9 of car boxes of yellow brass with a lining of Babbitt metal in them was five cents per pound.

The defendant supposed that the lot of 12,473 pounds was free from Babbitt metal, but knew that the miscellaneous lot of 480 pounds was in part composed of boxes so lined. In preparing his telegram and letter of June 8, he had in mind only the larger lot which he was then about purchasing, and the sending of the smaller lot as well to the plaintiff was an afterthought; but he understood that boxes lined with Babbitt metal

were a good delivery under the plaintiff's telegram of June 9, offering to pay " eight cents for brass boxes." He had no intention to cheat the plaintiff in any part of the transaction, and none of the statements in his communications to the plaintiff were intentional misrepresentations.

All of the boxes were brass car boxes of good quality of their respective kinds, but owing to the presence of the lined boxes the whole lot shipped was not " a good lot," or " free from Babbitt."

The fair market value of the whole lot in Boston on June 9, was seven cents per pound, or $129.53 less than the price paid by the plaintiff. The 848 pounds of boxes lined with Babbitt metal were worth in Boston $25.44 less than the price paid for them in the lot by the plaintiff.

The judge ruled that the sale was made at Boston; that the language used by the parties in making it was to be construed in accordance with its meaning in the trade in Boston; that upon the facts before recited the plaintiff was entitled to recover in the action; and that the measure of his damages was the difference on June 9, at Boston, between the value of the whole lot of boxes actually shipped and that of an equal quantity of a good lot of miscellaneous brass car boxes free from Babbitt metal; and found for the plaintiff in the sum of $129.53.

If the rulings and finding were correct, judgment was to be entered thereon; otherwise, such judgment was to be entered as law and justice might require.

*O. B. Mowry,* for the defendant.

*C. Q. Tirrell,* for the plaintiff.

FIELD, J. No objection has been taken to the ruling of the court, as recited in the report, "that the sale was made in Boston; that the language used by the parties in making it was to be construed in accordance with its meaning in the trade in Boston." The court has found that " in making the purchase the plaintiff relied on the defendant's telegram and letter of June 8," etc. It has also found that the " defendant understood that boxes lined with Babbitt metal were a good delivery under the plaintiff's telegram of June 9, offering to pay ' eight cents for brass boxes,' " and that the defendant "had no intention to cheat the plaintiff in any part of the transaction," etc. We think that it was

competent for the court to find, on the evidence contained in the report, that the plaintiff's telegram of June 9, considered with reference to the circumstances under which it was sent, referred to the boxes which had been described in the defendant's telegram and letter of June 8; that the plaintiff intended that it should be so understood; and that the defendant, as a reasonable man, ought so to have understood it. It was therefore competent for the court to find that, by the true construction of the telegrams and letters of the parties, the defendant agreed to sell, and the plaintiff to buy, car boxes which should be free from Babbitt metal and a good lot.

When a contract is entered into by written correspondence, the construction of the writings is for the court, if all the facts which can affect the construction are agreed or found, and in the absence of fraud, accident, or mistake one party cannot be heard to say that in his own mind he understood the correspondence in a different sense from that given to it by the court. The effect of a written contract cannot be varied by any understanding of its meaning entertained by only one of the parties, which was not, at the time of making the contract, communicated to the other party or parties. *Miller* v. *Lord*, 11 Pick. 11, 24. *Sawyer* v. *Hovey*, 3 Allen, 331.

It is manifest from the report, that the court found, either that there was a contract for the sale of a good lot of car boxes free from Babbitt metal, or that the minds of the parties did not meet, and that no contract was made. The court expressly found that "the whole lot shipped was not 'a good lot,' or 'free from Babbitt.'" If there was such a contract, as the plaintiff paid for the boxes without examining them, relying upon the representations of the defendant that they were a good lot and free from Babbitt metal, and as the representations were false, the plaintiff could maintain his action to recover the difference between the value in Boston of the whole lot as it was, and what would have been the value if the lot had been as represented. If there was no contract, the plaintiff could recover the difference between the price paid and the value in Boston of the lot as it was. The court, in effect, has found that the price paid was the value of the car boxes in Boston if they had been as represented, and therefore the

damages are the same in amount whether there was a contract or not. It is the difference between the price paid and the market value in Boston of the whole lot as it was, which the court has taken as the damages. We cannot say that there is any error in this.

The defendant contends that, as there were only eight hundred and forty-eight pounds of boxes lined with Babbitt metal, and as these were worth in Boston only $25.44 less than the price paid for them as a part of the lot, the plaintiff, if he can recover at all, can recover only this sum. But the boxes lined with Babbitt metal were mixed with the others, and were a substantial part of the whole, and it would require time and labor to separate them from the rest. If the plaintiff had known the character of the lot sent him, he could have rejected it altogether, and he was not required to select and receive the part which conformed to the representations. The plaintiff never ordered or bought a lot of car boxes free from Babbitt metal mixed with boxes lined with such metal. The fact that, after the boxes lined with Babbitt metal were taken out, there were more than six tons of boxes, does not help the defendant, for the court may well have found that the plaintiff's offer was to buy all the boxes of a given description which the defendant had, and that the defendant accepted this offer, and sent the whole lot as a performance of this part of the contract.

*Judgment on the finding.*