60  199
62  363

ST. ANTHONY LUMBER COMPANY v. BARDWELL–ROBINSON COMPANY.[1]

February 1, 1895.

No. 9080.

Sale of Personal Property—Acceptance.

> *Held* that, upon the evidence, the question whether the vendees (the defendants) had accepted personal property as performance of the contract of sale, so as to bind them to pay the contract price, was for the jury.

Construction of Contract.

> The contract construed, and *held*, that defendants were entitled to a fair average in quality of all the logs described in the contract as belonging to the plaintiffs on the upper Mississippi and its tributaries, and not merely of such logs as in fact came down into the boom at Minneapolis.

Measure of Damages.

> The measure of defendant's damages, caused by the inferior quality of the logs delivered, was the difference between the market value of the logs delivered at the various dates of delivery and the market value at the same dates of logs of the quality called for by the contract.

Action in the district court for Hennepin county to recover a balance of $11,016.59, with interest, for pine logs sold and delivered to the defendant under a written contract with it and another company. The contract contained a recital that the plaintiff was the owner of 9,000,000 "feet of pine logs now in the Mississippi river and its tributaries above the city of Minneapolis," marked with seven specified log marks. The other material parts of the contract are stated in the opinion. The answer alleged that, by reason of the logs removed at Sauk Rapids and Little Falls, the kind, size, and quality of the logs delivered to the defendant were inferior to the kind, size, and quality to which it was entitled under the contract, and which it otherwise would have received. The answer also set up a counterclaim for overpayments made by the defendant, and one for lumber bought by it to supply the place of that which it should have obtained from the logs received under the contract.

At the trial the court refused to instruct the jury that the evidence showed such an acceptance as would waive any claim for dam-

[1] Reported in 62 N. W. 274.

ages, but left the question of acceptance to the jury, instructing them to return a verdict for the amount claimed by the plaintiff, if they found there was an acceptance, and, if there was no acceptance, to determine whether the defendant got an average quality of the logs. The jury rendered a verdict for the plaintiff for $5,774.09, and from an order of the court, Smith, J., denying its motion for a new trial, plaintiff appealed. Reversed.

*J. B. Atwater,* for appellant.

*Wilson & Van Derlip,* for respondent.

MITCHELL, J. This action was brought to recover the price of logs sold and delivered by plaintiff to defendant under the contract, Exhibit A of the complaint. In its answer defendant sought to recoup, against the contract price, damages caused by the fact that the logs delivered were inferior in quality to what the contract called for.

1. The first question is whether the defendant had accepted the logs as performance of the contract, so as to obligate it to pay the contract price, regardless of their quality. It will be observed that the logs were not to be delivered all at once, but from time to time during the season, and the evidence shows that they were in fact delivered by instalments, commencing with the first of May and extending down to the last of September. The contract also evidently contemplated that the defendant would saw up the logs as they were delivered, according to the necessities of its business. What it was entitled to was a fair average of all the logs described in the contract. It was not entitled to insist that each instalment delivered should be up to that average, but only that the entire amount delivered during the season should be up to it. The evidence also tends to show that logs do not run evenly as to quality during the season, the smaller logs ordinarily coming down first. Until all the logs were delivered, it could not be certainly ascertained whether they complied with the contract or not. Defendant could not safely refuse to receive any particular lot of logs as not coming up to the requirements of the contract, because subsequent deliveries might be better, and bring up the general average to the required standard. There is evidence tending to show that defendant did not possess, and could not have obtained, full means of ascertaining whether

the logs complied with the contract, until at or near the end of the season.   There is also evidence that during the season defendant frequently made complaint that the logs were running low in quality, and that plaintiff in reply assured it that the logs to be thereafter delivered would be of a better quality.   When the season closed, and the logs were all delivered, and it was ascertained by the defendant that they were not in accordance with the contract, it was impossible for defendant to return them, for the reason that they were already all, or nearly all, sawed up.   Upon this state of facts the trial court was amply justified in submitting to the jury the question whether defendant had accepted the logs as full performance of the contract, so as to bind it to pay the full contract price.

2. The next question involves the construction of certain provisions of the contract bearing upon the mode of determining what quality of logs defendant was entitled to.   It will be observed, while the contract recites plaintiff's ownership of 9,000,000 feet of pine logs in the Mississippi and its tributaries, yet it only agrees to sell and deliver the defendant and the other vendee "all of said logs marked with said log marks which shall come into the boom of the Mississippi and Rum River Boom Company at Minneapolis during the year A. D. 1893."   In another part of the contract the plaintiff reserved to itself the right to take out at Sauk Rapids, of the logs previously described, 2,000,000 feet to perform a contract which it had previously made with another party, but it was expressly provided that the logs thus to be taken out should be "a fair average of all the logs bearing said two marks," and the plaintiff was required to oversee the turning out of these logs, and "to enforce the selection of only a fair average of said logs."   The evident object of this was to prevent such a selection from being made as would reduce the quality of the logs to be delivered to defendant below the general average quality of the logs described in the contract.   The contract also contained provisions requiring plaintiff to see to it that in turning out logs to defendant and its covendee each should receive equally in both amount and quality.   It appeared that, without plaintiff's authority, direction, or knowledge, as it offered to prove, certain parties at Little Falls took out and sawed up of plaintiff's logs described in the contract over 1,350,000 feet, but for which plaintiff afterward received payment from the parties who

took them.    The evidence showed that these parties at Little Falls selected and took out a class of logs much above the average quality of plaintiff's logs.    The result of this necessarily was to reduce the quality of those received by defendant.    The question arose on the trial whether these logs should be taken into the account in determining whether the logs received by defendant were in quality in accordance with the contract.    Plaintiff's contention is that, as these logs never came into the boom at Minneapolis, and were not prevented from doing so by any fault on its part, they were no part of the subject of the contract, and should have been entirely excluded from consideration in determining what quality of logs defendant was entitled to receive.    The manifest object of the plaintiff in limiting the contract of sale to such logs as should come into the boom at Minneapolis was to guard against the casualties and contingencies of log navigation, so that it would not be liable for the nondelivery of such of the logs described in the contract as might from such causes not get down to the boom.  · The logs taken out at Little Falls may not be, and probably are not, any part of the subject of the contract of sale, in such a sense as to render plaintiff liable in damages to defendant for their nondelivery; but it does not follow from this that they are not to be taken into account in determining whether the logs delivered were of the quality required by the contract.

An examination of the entire contract satisfies us that, while it was intended to relieve plaintiff from liability for the nondelivery of such of the logs described as, from no fault on its part, failed to arrive in the boom at Minneapolis, yet it is equally its plain meaning that defendant should have logs of the average quality of all the logs described in the contract as belonging to plaintiff.    Suppose, for example, other parties on the upper Mississippi river should have taken out all the white pine logs and all the larger and better logs, so that none had come down to Minneapolis except the smaller and poorer class of top logs of Norway pine.    Would it be claimed that defendant would have been bound to accept and pay for these as being the quality it was entitled to?    And yet that would logically follow from plaintiff's contention.    It is not necessary to consider whether all the rulings of the court on the trial are correct as abstract propositions, or would not have involved prejudicial error

had defendant claimed damages for the nondelivery of the logs taken out at Little Falls, for no such damages were claimed on the trial.    But we do hold that these logs were properly considered in determining the average quality to which defendant was entitled under the contract.

3. The proper measure of defendant's damages was the difference between the market value of the logs delivered at the various times of delivery and the market value at the same dates of logs of the quality called for by the contract; and the amount of damages thus ascertained should be deducted from the amount due plaintiff at the contract price.    We do not understand that defendant's counsel seriously disputes the correctness of this rule.    It also seems to have been the rule in the mind of the court, but the learned judge, usually clear and accurate in his rulings, seems to have inadvertently fallen into error in the application of it.    In the first place, in the admission of evidence as well as upon the trial, he ruled that it was the values at the date of the contract, and not at the dates of delivery, that were to govern.    In the next place, the court seems to have confounded the "contract price" with the "market value," and we cannot construe his charge to the jury otherwise than as meaning that the measure of defendant's damages was the difference between the "contract price" and the actual value of the logs delivered. Even if there be a presumption that property is reasonably worth what a party agreed to pay for it, yet no such presumption obtained in this case because of the lapse of time between the date of the contract and the dates of delivery, and the positive evidence that values had materially declined during the intervening time.    Counsel for defendant claim that the plaintiff in its complaint admits that the logs were worth the contract price, but we do not so construe the allegations referred to.    We think that all they mean is that the logs, at the contract price, came to the amount stated.    As a new trial must be ordered on account of this error, we do not deem it necessary to consider plaintiff's numerous other assignments of error, especially as we discover nothing in any of them that involves questions of any special importance, or that are likely to arise upon another trial.

Order reversed.