# GEORGE F. SLOAN & BROTHER *vs.* THE ALLE-GHENY COMPANY.

*Measure of Damages for Breach of Contract to Deliver Lumber Consisting of Certain Grades.*

Plaintiff sold to defendant the entire product of a saw-mill, called the cut of the mill, during a certain period, such product to be not less than five million feet nor more than seven million feet at a certain sum per thousand feet. The contract provided that the lumber so sold should run, as to quality, in the proportion of twenty per cent of lumber known as No. 1, thirty per cent of No. 2, and fifty per cent of No. 3. In plaintiff's deliveries there was an excess in some of the grades and a shortage in others, and defendant retained a part of the contract price as compensation for plaintiff's failure to perform. In this action the question was as to the proper method of ascertaining the amount of damages. *Held*, that the amount defendant is entitled to recoup as damages is the difference between the value of the product of the mill as described in the contract and the value of that which was actually delivered, and that in order to ascertain this difference, evidence is admissible as to the value of the various grades of lumber, as well as evidence as to the value of the entire cut of the mill.

Appeal from a judgment of the Superior Court of Baltimore City (STOCKBRIDGE, J.), where the case was tried before the Court sitting without a jury. The Court ruled that the plaintiff was entitled to recover the value of the lumber delivered to the defendants, as shown by a schedule offered in evidence, less the amounts paid on account, and that the recoupment allowed the defendant shall be the difference between the value of the lumber so delivered and what it would have been worth if delivered according to the contract. The Court refused to rule that the evidence as to the market values of the different grades of lumber specified in the contract should not be considered in ascertaining the damages, but that evidence as to the entire cuts of mills with guarantees of respective percentages of lumber Nos. 1 and 2 should be considered.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Boyd and Jones, JJ.

*Frank Gosnell* (with whom was *George Whitelock* on the brief), for the appellants.

*George R. Willis* (with whom was *Francis T. Homer* and *J. L. V. Murphy* on the brief), for the appellee.

Fowler, J., delivered the opinion of the Court.

The plaintiff, the Allegheny Company, is a North Carolina corporation engaged in operating a saw-mill there, and the defendants are lumber merchants doing business in the City of Baltimore under the name of George F. Sloan & Brother. In March, 1895, these parties made a written contract by which the former agreed to sell and deliver, and the latter agreed to purchase from the plaintiff, the pine-lumber product of its mill for the period of ten months from March to December 31st, said product not to be less than five million feet nor more than seven million feet during the period mentioned. The plaintiff guaranteed that this lumber should run in quality at least twenty per cent of No. 1, four inches and over wide; thirty per cent of No. 2, and fifty per cent of No. 3 and box, of which at least forty per cent should be stock, ten and twelve inches wide; any special widths ordered were to be counted as stock. The lumber was to be sawed from merchantable logs well kiln-dried, and to be sawed and assorted according to the directions of the defendants, but was to be of no other thickness than provided by the contract. For this entire "cut of the mill" thus guaranteed to run as to quality as above set forth, the defendants agreed to pay the plaintiff the gross sum of eight dollars and fifty cents per thousand feet net, delivered over the rail of vessels at the mill of the plaintiff. The "cut of the mill," or "the product of the mill," means all merchantable lumber—every thing the mill saws, with the exception of culls. A cull is defined by one of the witnesses as a board full of holes or knots and not

considered merchantable.    The same witness thus describes
the grades mentioned in the contract : A No. 1 board is
clear on one surface and such a board as can be used for a
first-class floor and trimmings and the other side must be
good and sound ; No. 2 is a board which may contain small
sound knots, and such a board as would make a good job;
No. 3 is a common board used for an under floor or some-
thing of that kind and is the worst board made except a
cull ; a box board is used to make boxes or for sheathing
a house.    The products of the plaintiff's mill during the
contract period amounted to 6,475,256 feet, all of which it
is conceded was received by the defendants.    It is conceded
by the plaintiff that the lumber delivered was not in accord-
ance, in quality or quantity, with the requirements of the
contract.    Thus in grade No. 1 there was an excess ; in
No. 2 there was a shortage of 958,393 feet ; in No. 3 and
box there was an excess of nearly 1,000,000 feet over the
fifty per cent as provided by the contract.

The contract price for the " cut of the mill" for the period
mentioned amounted to $55,039.77.  Of this sum the defen-
dants paid to the plaintiffs $47,692.67, retaining in their
hands the difference, amounting to $7,347.10, as compensa-
tion for damages they claim to have suffered by reason of
the failure of the plaintiff to perform the contract.    Where-
upon the plaintiff brought this action on the *common counts.*
The case was tried before the Court below without a jury.
The verdict and judgment being against the defendants for
$3,483.72, they have appealed.

Their contention is that they have a right to recoup the
whole balance of the contract price retained by them, having
suffered loss to a greater extent by the failure of the plain-
tiff to perform its contract, while the plaintiff, conceding that
there was a breach on its part, as above mentioned, disputes
the amount of the damages claimed, and takes issue with the
defendant as to the *method* of ascertaining them.

The only question, therefore, presented by this appeal is
what is the proper measure of damages.  During the course

of the trial eight exceptions were taken, seven relating to the admissibility of testimony and the eighth to the ruling upon the prayers ; but counsel on both sides conceded in argument that the question above suggested, the measure of damages, or the method of ascertaining them, as applied to the facts of this case, lies at the bottom of each exception. If, therefore, we first determine the general rule proper to be here applied, the various exceptions may be briefly disposed of.

Indeed the main question itself is a narrow one, and we think, both upon reason and authority, the Court below was free from error in fixing the amount of loss by admitting evidence of the various grades of lumber. It will be observed, however, that while testimony as to the value of the various grades was admitted, testimony as to the value of the entire "cut of the mill" which was offered by the defendant was also admitted.   This we think was a reasonable and proper course to pursue, and it is sustained by authority as well. In the case of *Williamson* v. *Dillon*, 1 Harris & Gill, 466, the contract was for the delivery at Zanesville, Ohio, of 250 barrels of flour, not less than one-third of which was to pass as fine quality, the remaining two-thirds ·as superfine.   It was held that evidence of the value of *each kind* was admissible to show the damage occasioned by the failure to deliver at the place designated the quality of flour contracted for, and that the measure of damages is the same whether the action is brought for a non-delivery, or a delivery of a different quality from that contracted for, namely, the value of such article at the time and place of delivery.

The contention of the defendants is that they contracted for "the cut of the mill," to be made up by certain proportions or percentages of the several grades of lumber mentioned in the contract, and that the *only* method of ascertaining the damage caused by the plaintiff's breach of contract is to determine the difference between the value of the product or cut of the mill as described in the contract, and the value of the cut of the mill which was actually produced,

delivered to, and accepted by them.   This difference they
claim the right to recoup.   Nor is this right disputed.   But
how is the difference to be determined ?   Their own witness
said that the *contract price*, that is to say the value of the
product of the mill contracted to be supplied, depended upon
the percentage of the several grades, because some of them
are more valuable than others.   It would seem, therefore,
necessarily to follow that if the value of the product of the
mill as actually supplied is to be ascertained the two ele-
ments above mentioned must govern the result—and both
are to be considered.   In regard to the percentages there is
no controversy.   But what will the knowledge of the pro-
portions of the grades which make up the whole avail if we
know nothing of the *value* of the grades themselves.   Neither
of these elements alone will give us the desired result.   But
the suggestion of the defendant is that the prices of the grades
are not necessary ; and that the only way to arrive at a
proper result is to get the value of the whole product of the
mill.   As we have already said, however, according to the
testimony of their own witness, this value of the whole
depends upon the percentage, because some of the grades
are more or less valuable than others.   So that it would
seem that whether the one method or the other be adopted
in either case testimony as to the value of the different grades
would not only be proper, but necessary.   We conclude,
therefore, that the Court committed no error in admitting
the testimony excepted to.

The eighth exception relating to the ruling upon the
prayers presents in various forms the same question we have
been considering.   Plaintiff's second and defendant's first
prayers were granted in connection with each other.   They
submit the questions of fact to the Court to ascertain from
the evidence in the case the amount the defendants were
entitled to recoup, and that amount having been found, there
can be no objection made to it here, provided, as we have
held, the testimony excepted to was properly admitted.
Defendant's second prayer is also based upon the theory

that the testimony which we say was properly admitted should have been excluded. Defendant's third prayer was also properly rejected because it asked the Court not to consider the testimony as to values of different grades.

*Judgment affirmed with costs.*