MISSOURI & ILLINOIS COAL COMPANY, Appellant, v. CONSOLIDATED COAL COMPANY of St. Louis, Respondent.

St. Louis Court of Appeals, November 18, 1907.

1. **ACCORD AND SATISFACTION: Liquidated Demand.** Where there is an agreement in settlement of a meritorious controversy about the amount due from one to another, this is accord and satisfaction, although the demand out of which the controversy arises is liquidated.

2. ———: ———: **Meritorious Controversy.** Where the plaintiff sold lump coal to the defendant and the defendant claimed in good faith that the plaintiff delivered "mine run" coal, of an inferior grade, this was a meritorious controversy which, in an action on account for coal delivered, would support the defense of accord and satisfaction, where the evidence tended to show there was a settlement by a deduction from the plaintiff's claim, the difference in the values of the two coals.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*L. P. Crigler* for appellant.

*Forman & Whitnel, Boyle & Priest* and *Edward T. Miller* for respondent.

Where the correctness of an account is in dispute between two parties and the creditor agrees to accept, and does accept, and retains a sum offered by the debtor in full settlement, and executes releases in full of the account, the settlement becomes final and conclusive upon the parties. Coal Co. v. St. Louis, 145 Mo. 651; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785; Ostrander v. Scott, 161 Ill. 339, 43 N. E. 1089.

GOODE, J.—This is an ordinary action in assumpsit for a balance alleged to be due on coal sold and delivered to the defendant by plaintiff. The balance

is claimed on account of sales during the months of December, 1904, and January, 1905, and the amount claimed is $901.32. The defense is an accord and satisfaction alleged to have been entered into on or about February 13, 1905. Plaintiff company had made a large number of sales to defendant during the months of September, October and November, 1904, and those deliveries had been paid for in full. The purchases were of lump coal; that is, coal which had been run through a screen and the dust and smaller lumps taken out. In January, 1905, the officers of the defendant company, according to their testimony, ascertained that a considerable portion of the coal delivered was what is known as mine-run coal which never had been screened and was worth in the market fifteen cents a ton less than the lump or screened coal. Complaints were made by some of defendant's customers of the quality of the coal, and for this reason payment for the December, 1904, deliveries was withheld. Several demands were made by the plaintiff for payment, with the threat that if the account was not paid, it would be put in the hands of an attorney for collection. The defendant company refused to make payment until an agreement was reached by which it would be allowed the difference between the price of lump coal and the mine-run coal which had been received. On or about February 13, 1905, after considerable correspondence, a meeting was arranged between W. S. Scott, vice-president of the plaintiff company and W. Schmick, general sales agent of the defendant, to talk over the dispute and, if possible, adjust it. There is a conflict of testimony as to what occurred at that meeting. According to Schmick he had ascertained definitely that eighty-five cars of mine-run coal had been delivered by the plaintiff subsequent to November, 1904. Scott had been previously notified that defendant claimed the eighty-five

cars were not up to contract. Schmick claimed further that the same proportion of mine-run coal had been delivered during the months of September, October and November, but that they had been unable to identify the particular cars of inferior coal delivered during those months. He swore he and Scott finally agreed to fix the total number of cars of mine-run coal which plaintiff had delivered to defendant during all the months at 170, containing on an average thirty-five tons each, and to allow defendant a deduction of fifteen cents a ton from plaintiff's bill for the December and January deliveries. The total amount of the deduction was $892.50, which, in connection with a small credit defendant was entitled to for overweight ($8.82) equalled the balance claimed by plaintiff on its December and January deliveries, to-wit, $901.32. It should be stated that the value of the coal delivered during those months was $16,124.62, but defendant had made two payments on the account amounting to $15,223.30, leaving the balance of $901.32, for which plaintiff sued. Both of the receipts given by plaintiff when the two payments were made, recited they were in full payment of the accounts as rendered. Scott testified regarding the alleged settlement that Schmick first claimed thirty-one cars of inferior coal had been delivered and subsequently raised the number to eighty-five. He further testified the arrangement made between him and Schmick on February 13th, was that defendant should withhold from the payment then made for December and January deliveries, the sum of $892.50, or the difference between the price of 170 cars of lump coal and that number of cars of mine-run coal, until Schmick could complete his investigation regarding how many cars of inferior coal had been delivered, and furnish Scott with positive proof that, in truth, a certain proportion of mine-run coal had been delivered instead of lump coal. In other words, that no agreement was made that

defendant should be allowed a credit absolutely on plaintiff's account against it for December and January deliveries, but that until the matter was thoroughly sifted, payment of a portion of the account should remain in abeyance, Schmick agreeing to furnish plaintiff proof as to the deliveries of inferior coal. Scott also testified, and the correspondence showed, that he afterwards requested the proof, but Schmick did not furnish it, saying the dispute had been settled and the defendant company had no further interest in it. A bill in the sum of $892.50 was made out by defendant against the plaintiff for the reclamation claimed by the former. This bill was receipted as paid by the defendant and was accepted by plaintiff as part of the payments made by defendant on the December and January deliveries; which payments, as already stated, were acknowledged in the receipts given by the plaintiff, to be in full settlement for coal sold and delivered during those months. It appears from the foregoing statement of the facts that there was a square conflict in the evidence on the issue of whether or not an accord and satisfaction was entered into by the parties. According to Schmick's statement the whole matter was adjusted and finally settled on February 13, 1905; whereas, according to Scott, payment of the balance alleged to be due was merly postponed and made to depend on defendant's officer furnishing proof that there ought to be a credit allowed for inferior coal. The court found the facts in favor of defendant and entered judgment for it. A declaration of law was given which stated, in substance, that if the court found there was a controversy between plaintiff and defendant as to the amount due plaintiff for coal sold and delivered during the months of December and January, and that thereafter, in February, defendant agreed to pay, and plaintiff to accept, in full satisfaction the sum of $15,223.30, and defendant did pay and plaintiff did accept said sum in full satisfaction of

said demand, the judgment must be for defendant. Complaint is made of that declaration and also of the finding that there was an accord and satisfaction.

No doubt the evidence tended to prove there was a bona fide reclamation by defendant on account of inferior coal. As to the difference in value of lump and mine-run coal, the evidence is conclusive; and if plaintiff delivered the inferior sort, when the contract of purchase was for lump coal, defendant was entitled to be reimbursed the difference in the price. Plaintiff's counsel contends that as defendant had sold the coal to its customers it sustained no loss. There is no proof that it has sustained no loss, and for aught we know its customers may have demanded and obtained reclamation. However, we regard that matter as irrelevant and not to be investigated in the present cause. Plaintiff had sold lump coal and if it delivered an inferior grade, defendant had a just demand against it for the difference in the price of the two articles. [Joplin Water Co. v. Bathe, 41 Mo. App. 285; Long v. Armsby, 43 Mo. App. 253.]. It ought to be said in justice to plaintiff that it contends the coal it sold had been purchased from other dealers and plaintiff supposed it was getting lump coal. But even if inferior coal was furnished by mistake, that did not relieve plaintiff from its liability to defendant. The question then is whether, as plaintiff's demand is of a liquidated character, payment by defendant of a less amount in settlement of the controversy which had arisen between the parties, would constitute a valid accord and satisfaction. Under the authorities we think there can be no doubt that it would be. As defendant's claim was made in good faith and apparently based on actual occurrences, the circumstance that plaintiff's demand was for a liquidated indebtedness, did not render invalid as an accord and satisfaction, the settlement made in February. What is essential in such cases is to find a consideration for the

accord and satisfaction; and this consideration exists when there is a meritorious controversy between the parties as to the amount due in consequence of the defendant's claiming a setoff or a maintainable counterclaim, as defendant's was, since it arose out of the same transactions on which the plaintiff's demand is founded. [R. S. 1899, sec. 605.] This case is covered by Pollman Coal Co.. v. St. Louis, 145 Mo. 651, 47 S. W. 563, from which it is undistinguishable in principle. In the Pollman case the defense of accord and satisfaction was supported, although the plaintiff's action was on a liquidated demand. [See, too, Ostrander v. Scott, 161 Ill. 345.]

It is further claimed in behalf of the plaintiff that the declaration of law given by the court shows the court misconceived the facts in assuming there was evidence of a dispute between the parties as to the amount due plaintiff for coal sold and delivered by plaintiff during the months of December and January. The substance of this contention is that the undisputed evidence shows defendant put forward no claim that inferior coal had been delivered in January. What the evidence shows is that Schnick said none of the eighty-five cars of mine-run coal which he had positive proof were received by defendant, were delivered in January. It does not show that he admitted there was no bad coal delivered during that month, but on the contrary, that he claimed the same proportion ran through all the months. However, at most, this wording of the instruction is immaterial. What the court had to find and did find, was that there was a substantial controversy between the parties as to what defendant owed plaintiff, and that this disagreement arose in consequence of a bona fide and plausible claim by defendant that it ought to be reimbursed for inferior coal delivered to it under its contract for screened coal. The court found there was such a controversy, and as the evidence supported

the finding there was a sufficient consideration to uphold any accord and satisfaction reached by the parties in settlement of it.

The judgment is affirmed.   All concur.