[No. 10582. Department One. January 21, 1913.]

O. Yamaoka, *Respondent*, v. J. S. Kloeber, *Appellant*.[1]

Sales—Breach by Seller—Damages—Measure. Where pedigreed breeding stock was sold for export to Japan on the representation that it was registered and under an agreement to deliver registration certificates, with full knowledge of the market conditions in Japan, where the expense of marketing them was great and without the certificates the stock was valuable only as beef, the measure of damages is the difference between the value of the stock in Japan as contracted for and the value without the certificates; and damages in a large sum based upon reasonably certain evidence will be upheld as reasonably within the contemplation of the parties.

Sales—Breach of Seller—Defenses. A seller of pedigreed stock, who agreed to furnish certificates of registration, cannot escape liability for breach of the agreement by asserting that he was only a broker.

Damages—Breach by Seller—Mitigation of Damages. A purchaser of pedigreed stock, under an agreement whereby the seller was to furnish certificates of registration, is not bound to mitigate the damages by procuring the certificates, where the information necessary for an application for registration was in the exclusive possession of the seller.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 30, 1912, upon findings favorable to the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Preston & Thorgrimson*, for appellant.

*Shank & Smith*, for respondent.

Gose, J.—This is an action to recover damages, arising from the failure of the defendant to furnish the plaintiff

[1]Reported in 129 Pac. 387.

with certificates of registration and transfer for one Holstein-Friesian bull and four bull calves of the same breeding. The complaint alleges that the animals were sold to the plaintiff by the defendant, to be shipped and sold in Japan, and that the defendant agreed with the plaintiff, at the time of making the sale, that he would at once cause the animals to be registered and forward the certificates of registration and transfer to the plaintiff, and that he failed so to do. The court found against the plaintiff upon the issue as to the old bull, and found for him upon the issues as to the four bull calves, and a judgment was entered accordingly. The defendant prosecutes the appeal.

The court found that the appellant failed and neglected to furnish the certificates, despite the repeated demands and his repeated promises to furnish them; that with the certificates of registration the young bulls would have had a market value in Japan of $2,000, but without the certificates they had a value of only $100, and were salable in that market only as beef. In a memorandum opinion, which was reaffirmed in the findings, the court found that the appellant knew that the respondent was purchasing the calves for exportation and sale in Japan. These findings are supported by a preponderance of the evidence. On October 11, 1907, after the sale of the old bull and prior to the sale of the bull calves, the appellant wrote the respondent:

"I wish to . . . express my appreciation of the visit of two of your representatives to see my herd of Holstein-Friesians. I showed them some young stock of excellent quality, stock that could not be duplicated in this part of the country at anything like the price I made, and which I made particularly because I foresee a large business with Japan in the dairy industry and was particularly desirous of having my herd represented amongst the herds of your country."

On March 24, 1908, he wrote:

"I am very glad indeed that you are pleased with your purchase, and will assure you of my very great appreciation

of your business in the past and hope that you will favor me with your future patronage for exportation."

Again, on March 30, the date the cattle were shipped from Seattle, he wrote:

"I think you have made a good choice of stock for exportation. All of the animals you are taking with you are representatives of the best families of the Holstein-Friesian breed, and belong to the hardy, strong branches, not the closely inbred and smaller ones that you find in some parts of the East. I think that your country is to be congratulated on having this kind of stock introduced into it as a foundation stock, and I hope we shall be able to [do] a great deal more business along this line with you. . . . The papers of transfer and registration will be here inside of a few weeks and will be forwarded to you."

The respondent paid $575 for the four calves, and received from the appellant a guaranty that he would procure and forward certificates of registration and transfer. Demands for these certificates were made from time to time for a year and a half after the calves were shipped to Japan, and the appellant's promises to comply were iterated and reiterated, but never kept. In these demands the appellant was repeatedly advised that the calves could not be sold in Japan without the registration certificates, a fact which he as a breeder of such cattle must be presumed to have known. The appellant testified that he had been engaged for a number of years in breeding and selling pure bred Holstein-Friesian cattle, and that he was a member of the Holstein-Friesian Association of America, and "very thoroughly" familiar with its rules and regulations. As a breeder of pure bred cattle, he knew that certificates of registration are the only accepted evidence of their breeding in the market. This is a general rule.

The appellant strenuously insists that the damages allowed by the court are unreasonable and based upon uncertain evidence, and argues that the appellant was ignorant of the market value of such cattle in Japan, and that he did not

know that in that market such cattle, unaided by certificates of registration, had no value except as beef. The vice of the argument is that the appellant testified that he was familiar with market conditions in Japan. Nor was the evidence of the market value uncertain. The shipment comprised thirty head of Holstein-Friesian cattle, made up apparently of twenty-five cows and heifers, one bull four years old, and the four bull calves in controversy. The respondent had the registration certificates for the twenty-five head, and testified that he sold them in Japan, and that he was familiar with the market value of such cattle there. The appellant did not controvert their market value. It is argued that, despite that fact, the court was not required to believe the respondent's testimony. That may be conceded, but the court did believe it, and there is nothing either unreasonable or inherently improbable in his testimony. Respecting the rule of damages in such cases, in *Miller v. Mosely* (Tex. Civ. App.), 91 S. W. 649, it was held that, where one person sells cattle to another, representing them to be registered, and agrees to deliver registration certificates and fails to do so, the measure of damages "is fixed at the difference between the value of the cattle delivered without registration papers and their value had they been properly registered." The general rule is that, where one contracts to deliver an article of a particular kind or quality and delivers an inferior article, the measure of damages is the difference between the value of the article contracted for and the value of the article delivered. *Seaboard Lumber Co. v. Cornelia Planing Mill Co.*, 122 Ga. 370, 50 S. E. 121; *Missouri & Illinois Coal Co. v. Consolidated Coal Co.*, 127 Mo. App. 320, 105 S. W. 682; *Sloan v. Allegheny Co.*, 91 Md. 501, 46 Atl. 1003; *Deutsch v. Pratt*, 149 Mass. 415, 21 N. E. 1072; *St. Anthony Lumber Co. v. Bardwell-Robinson Co.*, 60 Minn. 199, 62 N. W. 274; *Fargo Gas & Coke Co. v. Fargo Gas & Elec. Co.*, 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593; *Bump v. Cooper*, 19 Ore. 81, 23 Pac. 806; *Brock v.*

*Clark*, 60 Vt. 551, 15 Atl. 175; *Florence Oil & Ref. Co. v. Farrar*, 119 Fed. 150. "Damages, in legal acceptation, mean compensation for the loss suffered or the injury sustained." *Jones v. Nelson*, 61 Wash. 167, 112 Pac. 88.

We held in *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100, that where a manufacturer of lumber products sold egg case shooks to a jobber who he knew was buying to resell in the market, but who had no existing contracts, and failed to deliver, the measure of damages was the profits lost by the purchaser upon sales which he subsequently negotiated. In *Kleeb v. McInturff*, 62 Wash. 508, 114 Pac. 184, 116 Pac. 627, we held that, where a stallion was sold upon the representation that he was registered, upon a promise to furnish a registration certificate, and the horse was neither registered nor eligible to registration, the measure of damages was the difference between the price paid and the actual value of the horse at the time of purchase. These cases illustrate the principles which underlie an allowance of damages for a breach of contract. It is true, as argued, that the evidence of the amount of damages sustained must be reasonably certain, and that damages may not rest upon speculation or conjecture. While the damages are large, we cannot say that the amount awarded is unreasonable, or that it was not reasonably within the contemplation of the parties. As the learned trial court observed in his memorandum opinion:

"This is one of those contracts where profits alone were contemplated. Plaintiff bought the calves to resell in the high market of Japan. The things that evidenced or gave them their value in that market and which were to be furnished, were the necessary certificates. The two articles are to go and to be considered together. The calves are but one part, the certificates the other part. The certificates without the calves are worthless. The calves without the certificates are comparatively worthless as selling commodities in that market."

In principle there is no difference between this case and

a case where there has been a sale of a good article and a delivery of a defective, inferior, or incomplete article. The appellant represented that the calves were strongly bred in the best families of the breed. The expense of marketing them in Japan was large, a fact which he as a breeder for the market will be presumed to have known. He also knew that the value of a strongly-bred young bull of individual excellence is largely a matter of personal fancy, and that a price that will stagger one buyer will not deter another.

The animals were four years old at the time of the trial (May, 1911), and the respondent testified that the certificates then tendered were of no value because of the age of the animals, and because of certain unfriendly newspaper comment upon his representing the animals to be pure bred when he did not have the evidence of their breeding, and because of the plague among cattle in that country.

The contention that the appellant acted only as a broker in the sale of one of the calves, and hence is not liable in damages, is not tenable. The evidence supports the finding of the court that he agreed to furnish a certificate of registration for him and failed so to do. The contract of sale and guaranty is as follows:

"Seattle, Wash., 2-17, 1908.

"Received of Mr. Yamaoka (The Oriental Trading Co.) the sum of 2875.00 for the following Registered Holstein Cattle as follows:—

| | | | |
|---|---|---|---|
| 4 Head yearlings at 200.00 | | | 800.00 |
| 6 " 2 yr. old, at 250.00 | | | 1500.00 |
| *2 " Calf Bulls at 200 | | | 400. |
| | | | 2700.00 |

All in car at N. P. Stock Yard freight paid

| | | | |
|---|---|---|---|
| *1 Calf Bull } Express from | | | 100.00 |
| *1 " " } Hot Springs | | | 75.00 |
| | | | $2875.00 |

"The same to be Registered & Transferred to O. Yamaoka on the books of the Holstein Friesian Breeders of America.

"Signed  J. S. Kloeber."

The stars indicate the calves which form the basis of this controversy. It is argued that it was the duty of the respondent to mitigate the damages by personally procuring the certificates. The appellant testified that one applying to register a Holstein-Friesian calf was required to tender to the association an application signed by the owner of the sire at the date of service, by the owner of the dam at the date of its birth, and by the owner of the calf at the time the application was made. The application must also give the name and registered number of both the sire and the dam. The respondent did not have this information. The appellant had it, but did not use it.

The judgment is affirmed.

CROW, C. J., MOUNT, PARKER, and CHADWICK, JJ., concur.