## LAWSON & NELSON SASH AND DOOR COMPANY v. KRAUS-ANDERSON OF ST. PAUL COMPANY.

156 N. W. (2d) 208.

February 2, 1968—No. 40,668.

*Josiah E. Brill* and *Brill & Brill,* for appellant.

*Curtis D. Forslund* and *Dorsey, Owen, Marquart, Windhorst & West,* for respondent.

Rogosheske, Justice.

Plaintiff, as a subcontractor, brought suit against defendant, the general contractor, to recover the contract price for its manufacture of a part of the steeple of St. Joseph's Catholic Church in Browerville. The steeple had been blown off by a windstorm in August 1962. Defendant was awarded the general contract to reconstruct the steeple pursuant to plans and specifications prepared by an architect. The work was to be completed in 120 days from July 3, 1963. On July 17, defendant entered into a subcontract with plaintiff to furnish labor and materials for an octagonal, spheroid dome and a base to hold it, to be manufactured ac-

cording to the plans and specifications. Upon delivery to the site, these parts, which included eight ribs and four of the panels forming the dome, were to be hoisted to the top of the steeple with a large crane and thereupon incorporated by defendant into the steeple. The remaining four panels were then to be completed by defendant.

Upon plaintiff's delivery on September 27, defendant found the construction of the dome to be defective. The ribs were not properly made, did not fit into the base, and did not give the dome the correct shape. At the time of delivery, rented scaffolding was in place around the steeple in readiness to complete the work in the time required, and arrangements had been made to rent a crane, which was delivered before the end of September. Choosing to avoid delay and to make use of the rented crane and scaffold, defendant placed the parts upon the steeple and, with knowledge of the defects, elected to retain possession of the dome and correct the deficiencies of plaintiff's performance at the site. Upon defendant's subsequent refusal to pay the contract price, plaintiff instituted this action. Defendant counterclaimed for damages of $5,523.45, its alleged cost of correcting the defects.

The issues of whether plaintiff "faithfully performed" its contract; whether plaintiff's defective performance was excused because of defendant's and the architect's claimed approval of plaintiff's interpretation and execution of the plans during the process of manufacturing the parts; whether defendant accepted plaintiff's performance and waived its claim for damages; and whether defendant acted unreasonably in correcting the defects were submitted to the jury upon the theory that the subcontract was "not one for the sale of goods" governed by the Uniform Sales Act, Minn. St. 1961, § 512.01, et seq., but was for "work, labor, and materials" governed by the rules relating to building contracts. As authorized by the court's instructions, the jury returned a general verdict in favor of defendant for substantially the full amount of its counterclaim, offsetting the subcontract price of $4,200.

On appeal from a denial of its alternative motion for judgment n. o. v. or a new trial, plaintiff does not dispute the amount of defendant's damages resulting from its admitted defective performance of the subcontract, nor does plaintiff raise any issues with respect to the sufficiency of the notice of the breach or whether defendant acted unreasonably in remedy-

ing the defects in mitigation of its counterclaim for damages. Further, as we understand, plaintiff agrees that the questions submitted were jury issues and that the evidence sustains the jury's findings, and does not challenge defendant's recovery under rules governing defective performance of a building contract if such rules are applicable. Rather, the single question presented is whether the undisputed fact of defendant's election to retain the parts manufactured by plaintiff and incorporate them into the building with knowledge of the defects constitutes an acceptance in full satisfaction of the contract as a matter of law which binds defendant to pay the contract price and waives its right to recover damages for the breach.

Plaintiff relies solely upon Breen Stone Co. v. W. F. T. Bushnell Co. 117 Minn. 283, 135 N. W. 993.[1] In that case, the subcontractor agreed to furnish in accordance with plans and specifications cut building stone to a general contractor for use in the construction of a building in Aberdeen, South Dakota. Of the 700 stones furnished, a small number included in the first carload shipment were admittedly defective. The general contractor, with knowledge of the defects, accepted and used the stone in the building and made payment of all but $368 of the $3,800 contract price. Upon the subcontractor's suit for the balance of the contract price and defendant's counterclaim for $500 damages, the jury found for plaintiff and awarded the balance due. Upon appeal, the court affirmed and held that while there may have been error in submission of the case to the jury under rules governing building contracts, the error was harmless because the contract was not a building contract but one of sale and the contractor's acceptance and use of the defective stone waived the contractor's claim for damages for known defects. This holding was reached despite evidence, as an examination of the record reveals, that

---

[1] The strong language of Breen upon which plaintiff relies was quoted by the court from Schwartz v. Church of the Holy Cross, 60 Minn. 183, 62 N. W. 266, in which retention and use of an altar was held not to require a finding of acceptance as a matter of law. The restatement of the rule employed in the Schwartz case by the court in Breen (117 Minn. 289, 135 N. W. 995) is no doubt the basis of plaintiff's misapprehension that upon the facts of this case the trial court was compelled to find acceptance as a matter of law.

the general contractor notified the subcontractor of the defects claimed when the shipment of the stone arrived at the building site.[2] The trial court charged the jury that if it found that the plaintiff had not substantially performed the contract it could award the defendant his counterclaim. The issue of acceptance was not presented to the jury.

Plaintiff argues that since the Breen case has never been overruled, our adoption of the Uniform Sales Act in 1917 did not modify the holding because § 512.73 of the act provides that cases not covered by the act are governed by equitable principles or the rules of the law merchant. It contends that the decision is therefore binding and governs the disposition of a case such as this involving a contract for the sale of goods manufactured specially for use in a building but not the kind of goods governed by the sales act. We do not agree. The sales act was designed to govern the rights of parties to all contracts for the sale of goods and expressly includes as the definition of the subject matter of a sale "goods to be manufactured * * * by the seller." Minn. St. 1961, § 512.05(1). It also provides that a buyer may accept defective goods without waiving a claim for damages for nonconformity if the buyer gives notice to the seller of the breach within a reasonable time. Minn. St. 1961, § 512.49. If this contract is not governed by the rules relating to building contracts, it is governed by the provisions of the sales act, which, contrary to plaintiff's contention, must be held to modify the rule announced in Breen Stone Co. v. W. F. T. Bushnell Co. *supra.* Despite our agreement with plaintiff that the facts of the case relied upon are indistinguishable from this case, it is not controlling. The Breen case did not find acceptance as a matter of law but merely affirmed a jury finding that the plaintiff had substantially performed his part of the contract. The fact that in the case at bar the trial court, with plaintiff's agreement, held that the sales act did not apply and submitted the case upon the rules governing building contracts resulted in no prejudice to plaintiff, for application of either rule upon the single issue raised would produce the same result. This would be so in spite of the fact that the contract was for a movable com-

---

[2] Defendant's exhibit 7 set forth in letter form to the plaintiff that the reason for defendant's failure to remit the full amount of the contract price was the defective performance of the plaintiff.

ponent of the building, which could have been rejected as in a sale of goods, for the record permits a finding that the force of circumstance necessitated retention and use. Moreover, were this case to arise today, the Uniform Commercial Code would clearly apply and would not preclude the result arrived at by the jury and affirmed in this opinion. Minn. St. 336.2-105, 336.2-606(1) (c), 336.2-607(3) (a), 336.2-714.

No issue with respect to notice was raised at trial or here, and as we read the record, plaintiff was in fact notified of the nonconformity of the manufactured parts shortly after their delivery to the site. Hence, upon this record we must accept as a fact that proper notice was given. Also, at the trial plaintiff did not dispute or contest the reasonableness of the cost of remedying its defective performance. Under rules governing the sale of goods, defendant was therefore liable for the contract price but was entitled to have offset against that price the damages it concededly sustained by reason of plaintiff's breach of the subcontract. 17 Dunnell, Dig. (3 ed.) § 8636; St. Anthony Lbr. Co. v. Bardwell-Robinson Co. 60 Minn. 199, 62 N. W. 274. Under the rules governing building contracts, plaintiff was entitled to recover its contract price for substantially performing the contract and defendant was entitled to offset its uncontested damages to correct the defects unless the jury found that it had accepted plaintiff's performance in full satisfaction of the contract and, by necessary implication, waived any claim for damages. Restatement, Contracts, §§ 298, 411; 17 Am. Jur., Contracts, § 395. Cf. Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845, 9 L.R.A. 52; Annotation, 107 A. L. R. 1411; 4 Dunnell, Dig. (3 ed.) § 1850. The issue of such acceptance was one of fact for the jury under all the circumstances shown, and there is ample evidence to sustain the jury's implied finding of nonacceptance.

Affirmed.